Roberta WASHINGTON, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A. 01–M–504–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 11, 2001.

*ifano,* 556 F.2d 616, 618 (1st Cir.1977).

**1342**

Darryl Hunt and Marilyn Macey of Clark & James, L.L.C., Birmingham, AL, for plaintiff.

R. Randolph Neeley of the U.S. Attorney's Office, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), the claimant, Roberta Washington, brings this action to review a final decision by the Commissioner of Social Security ["the Commissioner"] (Doc. # 1, ¶ 3). The Commissioner denied the claimant's claims for Supplemental Security Income ["SSI"] (Doc. # 19). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED.

## I. PROCEDURAL HISTORY AND FACTS

The claimant was born on 5 November 1950, and was 49 years old at the time of the administrative hearing (R. 36). The claimant has a high school education and previously performed work as a house-keeper (R. 38). She alleges a disability onset date of 30 November 1998 due to (1) diabetes, resulting in numbness, dizziness, weakness and blurred vision when uncontrolled; and (2) occasional chest pain (R. 91).

On 30 November 1998, the claimant protectively filed an application for Supplemental Security income benefits based on disability under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* (R. 85–88). The application was denied initially and upon reconsideration (R. 62–69, 72–73).

Following an administrative hearing, the Administrative Law Judge ["ALJ"] denied the claimant's requests for benefits in a decision dated 14 February 2000 (R. 18–28). On 23 February 2001, the Appeals Council denied the claimant's request for review (R. 5–6). Therefore, the hearing decision became the final decision of the Commissioner of Social Security. On 25 April 2001, the claimant filed the instant action, alleging that the "findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied" (Doc. # 1).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act ["the Act"], this court's role is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983)).

■ This court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997).[1] "In determining whether substantial evidence exists, [this court]

---

1. In *Graham,* the Court of Appeals stated that "substantial evidence is described as more

must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir.1991).

## III. DISCUSSION

### A. Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that she is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must also evaluate the claimant's case using this sequential evaluation process. *Ambers v. Heckler,* 736 F.2d 1467, 1469 (11th Cir.1984).

First, the claimant must not be engaged in "substantial gainful activity." Second,

the claimant's condition or impairment must be deemed "severe." [2] Third, it must be determined whether the claimant's severe impairment meets or equals the severity of a listed impairment. If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant is conclusively presumed to be disabled based on his or her medical condition.

If the severe impairment does not equal or meet the severity of a listed impairment, the examiner proceeds to the fourth step, namely, an assessment of the claimant's residual functional capacity ["RFC"]. The assessment measures whether a claimant can perform past relevant work despite his or her impairment. If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether, in light of his or her RFC, age, education and work experience, the claimant can perform other work. §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).

### B. The ALJ's Findings

Within the structure of the sequential evaluation process, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity ["SGA"] [3] since the protected filing date (R. 27).

2. The claimant has the "severe" impairment of diabetes mellitus [4] and

---

than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 129 F.3d at 1422. *See also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

2. The condition is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. §§ 20 C.F.R. 404.1520(c)(1), 416.920(c)

3. Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.

4. Diabetes mellitus is defined as "a familial constitutional disorder of carbohydrate metabolism characterized by inadequate secretion or utilization of insulin, by excessive urine production, by excessive amounts of sugar in the blood and urine, and by thirst, hunger, and loss of weight." Webster's Medical Desk Dictionary 177 (1986).

the following impairments which are not "severe": mild arthritis, "some arm/and or back impairment," history of foot surgeries, and "any visual impairment she has" (R. 20, 21, 22).

3. The claimant's "severe" and non-severe impairments, whether considered individually or in combination, do not meet or equal any impairment set forth in Appendix 1, Subpart P, Regulation No.4 (R. 27).

4. The claimant's allegations of pain and functional limitations are not credible (R. 27).

5. The claimant has the RFC to perform light exertional work, but she is limited to those jobs that can be performed with a visual acuity of 20/40. In addition, she may experience occasional episodes of pain that cause no more than a mild to moderate impact on her ability to sustain concentration, persistence, and pace (R. 28).

6. The claimant does not appear to have any past relevant work (R. 28). The framework of Rule 202.20 of the Medical Vocational Guidelines and vocational expert ["VE"] testimony demonstrate that the claimant has the RFC to perform jobs that exist in significant numbers in the national economy (R. 28).

As a result of his evaluation, the ALJ concluded that the claimant did not have a "disability," as defined in the Act at any time through the date of his decision, and that she was therefore ineligible for any benefits (R. 28).

### C. Application of Standard to Claimant

Based upon the ALJ's findings, the claimant survives the first two steps of the test because she is not engaged in "substantial gainful activity," and her conditions are "severe." The claimant, however, did not survive the final step of the test because the ALJ determined that her impairment was not sufficiently severe to meet or medically equal the severity of any listed impairment set forth in the governing regulations. The ALJ continued his analysis to evaluate the claimant's functional limitations and determine whether the limitations are disabling.

### D. Rejection of Treating Physician's Opinion

The claimant asserts that the ALJ improperly rejected the opinion of her treating physician, Dr. Albert Lester ["Dr. Lester"] (Doc. # 11, p. 4). The objective medical evidence in this case includes treatment and/or progress notes from Dr. Lester from May 1998 through October 1999, a Physical Capacities Evaluation dated 2 December 1999, a Clinical Assessment of Pain dated 2 December 1999, and a Clinical Assessment of Fatigue/Weakness dated 2 December 1999 (R. 209–215).

The medical evidence indicates that Dr. Lester examined the claimant on eight occasions from May 1998 through October 1999 (R. 209–215). In May 1998, Dr. Lester diagnosed the claimant with uncontrolled diabetes mellitus, yet noted that the claimant's "blood sugar [was] better" and she was improving (R. 215). In July 1998, Dr. Lester's records indicate that the claimant had an upper respiratory infection, cough and cold (R. 215). In October 1998, the claimant complained about her left upper arm, shortness of breath and a "funny feeling in [her] chest" (R. 214); Dr. Lester concluded that these symptoms arose from diabetes mellitus (R. 214). In November 1998, he attributed her complaints about her shoulder and heart palpitations to diabetes and heart palpitations (R. 214).

During the following year, specifically in April 1999, the claimant reported weakness, numbness in her legs, and fatigue (R.

213). Dr. Lester prescribed Ultram,[5] and noted that the claimant's diabetes was uncontrolled and that she needed to obtain "strict control" of the disease (R. 213). In August 1999, the claimant complained of "hurting under her breast area and down [her] right side" (R. 210). An echocardiogram showed abnormal changes possibly due to myocardial[6] ischemia[7] (R. 212). Again, Dr. Lester attributed the claimant's symptoms to controlled diabetes mellitus and gastritis[8] (R. 209).

On 2 December 1999, Dr. Lester completed three forms for the claimant's attorney: a Physical Capacities Evaluation ["PCE"], a Clinical Assessment of Pain ["CAP"], and a Clinical Assessment of Fatigue/Weakness ["CAFW"] (R. 203–206). In the PCE, Dr. Lester stated the following:

1. The claimant could lift and/or carry five pounds occasionally or less.

2. The claimant could sit for zero hours in an eight hour workday and stand/walk for zero hours in an eight hour workday.

3. The claimant could occasionally push and pull, climb and balance, bend, stoop, reach, and perform fine and gross manipulation.

4. The claimant did not require an assistive device to ambulate.

5. The claimant should not operate motor vehicles, work around hazardous machinery, or work around dust, allergens, or fumes.

(R. 203). Dr. Lester based his opinion on the claimant's 1995 toe injury and subsequent surgery, and attributed her fatigue and weakness to diabetes mellitus (R. 203).

In the CAP, Dr. Lester indicated that the claimant still experienced pain from her 1995 toe fracture and surgery, and that the "pain is present to such an extent as to be distracting to adequate performance of daily activities or work" (R. 204). Dr. Lester also indicated that "physical activity, such as walking, standing, bending, stooping,[and] moving of extremities" would greatly increase the claimant's pain "to such a degree as to cause distraction from tasks or total abandonment of tasks" (R. 204). He further noted that the claimant's prescribed medication caused "some side effects . . . but not to such a degree as to create serious problems in most instances" (R. 205). Finally, Dr. Lester stated that the claimant did not have an underlying medical condition consistent with her pain (R. 205).

In the CAFW, Dr. Lester indicated that the claimant's "fatigue/weakness" negatively affected adequate performance of daily activities or work (R. 206). He also indicated that "physical activity, such as standing, bending, stooping, moving of extremities" greatly increased the claimant's fatigue/weakness and to such a degree as to cause total abandonment of tasks (R. 206).

■ The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight

---

5. "Ultram is indicated for the management of moderate to moderately severe pain." *Physicians' Desk Reference* 1586 (1996).

6. Myocardial is defined as "of, relating to, or involving the myocardium." *Webster's Medical Desk Dictionary* 460 (1986).

7. Ischemia is defined as "localized tissue anemia due to obstruction of the inflow of arteri-

al blood (as by the narrowing of arteries by spasm or disease)." *Webster's Medical Desk Dictionary* 353 (1986).

8. Gastritis is defined as "inflammation esp. of the mucous membrane of the stomach." *Webster's Medical Desk Dictionary* 260 (1986).

unless "good cause" is shown to the contrary. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986); *Broughton v. Heckler,* 776 F.2d 960, 961–62 (11th Cir. 1985). A similar preference for the opinions of treating doctors is found in the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2).

▆▆▆ If an ALJ gives less than substantial weight to the treating physician's opinion, he must clearly articulate the reasons for doing so, and the failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053. "Good cause" may exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *See Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen,* 825 F.2d 278, 280–81 (11th Cir.1987). "Good cause" may also be established if the doctors' opinions were conclusory or inconsistent with their own medical records. *See Jones v. Department of Health & Human Services,* 941 F.2d 1529, 1532–33 (11th Cir.1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991).

▆▆▆ Based upon the Court of Appeals' directives, this court finds that the ALJ properly considered Dr. Lester's medical opinions. The ALJ thoroughly addressed Dr. Lester's opinions on the PCE, CAP, and CAFW and concluded that "they are not entitled to any evidentiary weight" (R. 23). The ALJ specifically discounted the credibility of the PCE, stating:

> [t]he explanation offered by Dr. Lester is simply not persuasive. As noted above, the record shows that her [toe] surgeries were successful. The claimant herself has not alleged that her toes prevent her from working. Dr. Stern, who performed the operations, had never imposed any restrictions on her ability to work. Dr. Soler's examination did not establish any abnormalities of her feet. Finally, Dr. Lester's own clinic notes contain nary a mention of any complaints of foot pain.

(R. 24). The ALJ also noted that Dr. Lester's notes were simply not consistent with his conclusions.

> Moreover, Dr. Lester's clinic notes establish only one occasion since November 30, 1998 where the claimant complained of fatigue and weakness. That occurred on April 29, 1999, and he noted that her diabetes was not controlled. However, she had no such complaints on her next visit on August 10, 1999 and on August 24, 1999, Dr. Lester's notes state that her diabetes was "controlled." . . . In sum, Dr. Lester's clinic notes simply do not establish the existence of any impairment that would so drastically limit the claimant's ability to lift, carry, sit, stand, walk or use her hands.

(R. 24). The ALJ specifically discounted the CAP stating

> I find that the Dr. Lester's CAP is not entitled to any evidentiary weight. First, his conclusions are obviously based on the claimant's subjective complaints of pain. [In response to the question,] "Does this patient have an underlying medical condition consistent with the pain he or she experiences?" [Dr. Lester responded] "No." Second, the only condition he identified as causing the alleged pain was that she had fractured a toe in 1995 and had surgery. . . . Dr. Lester's own clinic notes

contain no reference to any complaints of toe pain. Finally, since her alleged onset date, Dr. Lester has only prescribed one eight-day supply of Ultram for pain—and that was for right elbow pain.

(R. 25). Finally, the ALJ specifically dismissed the CAFW stating

> ... I also find that Dr. Lester's CAFW is not entitled to any evidentiary weight. Although he replied in answer to a question ... that she had an underlying medical condition consistent with the fatigue/weakness she experiences, he did not identify that condition. . . . However, the record, including his own clinic notes, simply does not establish disabling levels of fatigue and/or weakness.

(R. 25).

The medical evidence in this case supports the ALJ's conclusions. The evidence indicates that Dr. Allen Stern, who performed the claimant's toe surgeries, did not place any limitations upon her ability to work (R. 24, 171–201). Moreover, Dr. Anthony Soler ["Dr. Soler"], performed a consultative evaluation of the claimant in March 1999 and, during the evaluation, the claimant reported no complaints regarding her toes or feet (R. 133, 136). Dr. Soler noted that the claimant had a normal gait and could squat, toe and heel walk (R. 134, 139). Dr. Soler opined that the claimant had no physical limitations (R. 134, 144–145). Further, the claimant did not allege any disability based upon toe or foot impairments in either her application for disability or at the administrative hearing (R. 35–60, 91).

Finally, Dr. Lester's records do not indicate that the claimant complained of foot pain or that she was treated for such pain (R. 209–215). Dr. Lester's records also fail to indicate the claimant's complaints of disabling fatigue and weakness, or the claimant's limitations with manipulation and working around dust, fumes and allergens. Accordingly, based upon the objective medical evidence and evidence in the record as a whole, the court finds that it was entirely reasonable for the ALJ to question or discredit Dr. Lester's opinions.

### E. Evidence of Pain and Credibility

The claimant contends that "the ALJ erred in his assessment of [her] pain" and the "assessment of her credibility" (Doc. # 11, p. 5–6). In examining a claimant's complaints of pain and other objective medical symptoms, "[t]he Secretary must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995) (citations omitted).

> After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence. *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir.1984). If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility. *Walker v. Bowen,* 826 F.2d 996, 1004 (11th Cir. 1987).

*Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.1992) (citations omitted).

■ There exists an underlying medical condition [9] that would reasonably support the existence of the pain about which the claimant complains. The claimant's subjective allegations of pain include: right foot pain, and constant back pain (R. 40,

---

9. This underlying medical condition is: diabe- tes mellitus (R. 17, 18).

43).[10] However, the ALJ found that the claimant's allegations and testimony of disabling pain and functional restrictions are not credible (R. 23).

> [The claimant's allegations of disabling pain and functional restrictions] are plainly disproportionate to the objective medical evidence. The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. There are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms . . . . [and] there is no evidence of an emotional component capable of producing pain of a psychogenic nature. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.

(R. 23). The medical record indicates that Dr. Soler examined the claimant based upon her complaints of "chronic pain in [her] right arm and history of diabetes" and he noted that she had diabetes mellitus, mild tendinitis in her right elbow and mild arthritis (R. 133, 134). Dr. Soler noted that the claimant had "right arm discomfort" and "no impairment-related physical limitations" (R. 133, 134). In August 1999, the claimant was treated at Jackson Hospital's emergency room for epigastric pain and hyperglycemia (R. 150). Although the claimant alleged shortness of breath, she had a normal chest x-ray (R. 150, 167). Accordingly, in view of the appropriate discounting of Dr. Lester's medical evidence (*see section D, supra*), the objective medical evidence in this case does not support the extent of the claimant's complaints of pain.

The ALJ also articulated specific reasons for questioning the claimant's credibility, noting that the "claimant's statements establish her tendency to exaggerate the nature and severity of her alleged impairment" (R. 23). The ALJ noted that, although the claimant "alleged vision problems and attacked the adequacy of [her] eye examination," she testified that she wears glasses only for reading (R. 23, 41). In addition, although the claimant testified that she takes Ultram and over-the-counter medication for pain; her only prescription for Ultram was for an eight-day supply on 2 May 1999 (R. 23, 47–48). Since the claimant would have exhausted her Ultram supply by 11 May 1999 and the administrative hearing did not occur until seven months later in December 1999, there is no evidence which supports her allegation that the level of her pain required consistent medication

Upon reviewing the objective medical evidence in the record, the court concludes that substantial evidence exists to support the ALJ's conclusion that the claimant's allegations and testimony of disabling pain and functional restrictions are not credible. Consequently, objective medical evidence supporting the extent of claimant's complaints of pain has not been established. Because the claimant failed to establish that the objective medical evidence confirms the severity of the pain alleged and due to the claimant's tendency to exaggerate the nature and severity of her alleged impairments, the court finds that the ALJ properly considered and analyzed the claimant's subjective testimony of pain.

 For all of these reasons, the court finds no error in the ALJ's decision and

---

**10.** However, the claimant testified that "it is [her] diabetes that gives her the most prob-

lems" (R. 40).

finds as well that the ALJ's decision is supported by substantial evidence and is the result of the application of appropriate legal standards.

## IV. CONCLUSION

For the foregoing reasons, it is the Order of this court that the decision of the Commissioner be AFFIRMED.

## ORDER

In accordance with the memorandum opinion entered herewith, it is

ORDERED AND ADJUDGED that the decision of the Commissioner be and is hereby AFFIRMED and that this case be and is hereby DISMISSED with prejudice. It is further ORDERED that costs be and are hereby taxed against the plaintiff.