[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-3449
Non-Argument Calendar
_____

D. C. Docket No. 94-10093-MMP

TAMMY GRAHAM,

Plaintiff-Appellant,

versus

KENNETH APFEL, Commissioner
of Social Security Administration,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____
**(September 16, 1997)**

Before HATCHETT, Chief Judge, EDMONDSON and CARNES, Circuit Judges.

PER CURIAM:

Tammy Graham appeals the district court's order affirming the Social Security Commissioner's denial of her application for supplemental security income, 42 U.S.C. § 1383(c)(3).

I.

Graham applied for disability benefits alleging disability beginning September 13, 1990, due to symptoms associated with insertion of a pacemaker. She alleged chest pain and fatigue associated with microcytic hypochromic anemia and congenital heart block.[*] Her applications were denied both initially and on reconsideration. On August 7, 1992, Graham requested a hearing before an Administrative Law Judge ("ALJ").

Graham's attorney filed his notice of appearance as representative for her on September 25, 1992. The hearing was scheduled for June 15, 1993, and a notice of that hearing was mailed to Graham at her residence; however, no evidence indicates that any notice was ever mailed to her attorney. Graham appeared at the administrative hearing without her attorney, and the ALJ found that she waived her right to be represented by counsel. It is unclear whether the ALJ was aware that Graham had retained

---

[*] A microcyte is an abnormally small red blood cell. Microcytic anemia is an anemia characterized by the presence of microcytes in the blood. Hyperchromic anemia is an anemia with increase of hemoglobin in individual red blood cells and reduction in the number of red blood cells. Webster's Medical Desk Dictionary, Merriam-Webster, Inc. (1986).

counsel. The ALJ did not note that she had retained an attorney, that he had entered an appearance, or whether he had been notified of the date of the hearing.

At the time of the hearing, Graham was a 19 year-old high-school student with one year remaining before graduation. She had no "past relevant work" within the meaning of the regulations. At the time of the hearing, she received $241/month in AFDC benefits and $202/month in food stamps, resided in subsidized housing, and paid $17/month for rent and $22/month for electricity.

On September 13, 1990, Graham received a pacemaker for correction of a "heart block" and microcytic hyperchromic anemia. She was stable on discharge, with a diagnosis of symptomatic heart block including Mobitz type I and third-degree AV block, and microcytic hyperchromic anemia. She was instructed to abstain from heavy lifting and upper body exercise for one month. In December 1990, Graham developed chest pain while marching in ROTC, and was briefly readmitted to the hospital. Her doctors determined that her symptoms were not cardiac but were chest-wall pain. By December 4, 1990, her treating physician had lifted the restrictions noting that she could "resume normal activity."

The medical records demonstrate that Graham has experienced chest pains, but her doctors determined on October 8, 1991, that the cause was costochondritis, inflammation of the ribs and cartilage, which is not a cardiac impairment. In December 1991,

3

Graham underwent surgery to remove impacted teeth with no residual effects.  In addition, a preoperative medical evaluation showed that she was an excellent candidate for the surgery, and no complications were anticipated as a result of the pacemaker.  She was prescribed Naprosyn and Ibuprofen.  In January 1992, Graham was seen by a plastic surgeon due to development of a keloid scar, which was causing some pain, at the incision site of her pacemaker.  She decided against an invasive treatment for the scar.  Graham sought treatment for chest pains in February 1992.  Her discharge summary advised that the pain probably emanated from her rib cage, not from her lungs or heart.  The causes could have been viral infection of the rib cage, bruising, or a pulled muscle.

Graham testified at the hearing that she could sit for about seven hours a day and stand for twenty minutes.  She attended high school full-time, participating in a special program where she worked at her own pace.  She also had an eight-month-old child who weighed about 20 pounds at the time of the hearing, and whom she left with her mother during the time she attended school.  She testified that she cooked meals for herself and her child, and assumed full responsibility for the child's care.  She further stated that she would lift the child about three times a day, but would not perform any other lifting.  In addition, she testified that she shopped for herself at a store two miles away, although her brother drove her.  Graham further testified she has been

4

unable to work because of chest pain, dizziness, and fatigue experienced since the insertion of the pacemaker.

The ALJ determined based on the medical evidence that Graham had a severe history of pacemaker insertion, costochondritis, microcytic hyperchromic anemia, development of keloid tissue over her surgery incision, and history of impacted teeth, but that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. In addition, the ALJ found that Graham's subjective symptoms of pain, dizziness, shortness of breath, and severe fatigue were not credible, because the alleged severity of the symptoms were inconsistent with the medical evidence, with her usual activities, and with reports of relief from these symptoms (with medications)from treating sources. Based on these findings, the ALJ concluded that although Graham did have severe impairments, she retained the maximum residual functional capacity to perform a full range of light work. He concluded that based on an exertional capacity for light work, and Graham's age, education, and work experience, Graham was not disabled, as defined by § 416.969 of Regulations No. 16 and Rule 202.17, Table No. 2, Appendix 2, Subpart P, Regulations No. 4. The Appeals Council denied review and the district court affirmed the Secretary's denial of benefits.

II.

Graham argues on appeal that failure to notify her counsel of the hearing violates her constitutional due process and statutory rights. She further argues that she did not knowingly and intelligently waive her right to counsel, and that due to the violation of her constitutional rights she need not prove that she was prejudiced by the ALJ's failure to fully and fairly develop the record.

The government acknowledges, as it should, that the SSA erred by failing to give notice of the ALJ hearing to Graham's attorney and that the ALJ perpetuated the Administration's error by failing to discover that Graham had counsel. However, the government argues that the deprivation of the right to counsel was a statutory wrong, not a constitutional wrong. The government contends that the claimant must demonstrate prejudice to establish a remandable violation of due process, and that the ALJ conducted a full and fair hearing so that the lack of attorney representation did not prejudice Graham. We agree.

III.

The Social Security Act mandates that "findings of the Secretary as to any act, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support

6

a conclusion. See <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The Secretary's decision is also reviewed to determine whether the correct legal standards were applied. See <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. See <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981). A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ. See <u>Brown v. Shalala</u>, 44 F.3d 931, 934 (11th Cir. 1995), citing <u>Smith v. Schweiker</u>, 677 F.2d 826 (11th Cir. 1982) and 42 U.S.C. § 406. The deprivation of the statutory right to counsel at a Social Security hearing is a statutory wrong, not a constitutional wrong. See <u>Holland v. Heckler</u>, 764 F.2d 1560, 1563 (11th Cir. 1985).

However, where the right to representation has not been waived, the hearing examiner's obligation to develop a full and fair record rises to a special duty. See <u>Brown</u>, 44 F.3d at 934-935, quoting <u>Smith</u>, 677 F.2d at 829. This special duty requires the ALJ to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' and to be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.' <u>Cowart</u>, 652 F.2d at 735 (citations omitted). It is not necessary to determine that the presence of counsel would necessarily have resulted in any specific

7

benefits.  See Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir. Unit B July 1981).  However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.  See Brown, 44 F.3d at 934-935.  The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'"  Id.

This Court has previously examined cases where notice was defective or the plaintiff's waiver of counsel was invalid.  In Brown, where the claimant had not made a knowing and intelligent waiver of right to representation at the hearing, we stated that a showing of prejudice was necessary for remand, and found prejudice where the ALJ had failed to fully develop the record.  See Brown, 44 F.3d at 934-35.  We noted that the ALJ had failed to obtain records of treatment about which claimant testified, that the ALJ agreed to get a rehabilitation report, but failed to do so, and that the ALJ had failed to question an available witness where the claimant had "great difficulty" explaining how her ailments prevented her from working.  Brown, 44 F.3d at 936.  In contrast, in Kelley v. Heckler, 761 F.2d 1538 (11th Cir. 1985), where the claimant claimed a due process violation due to lack of counsel at the administrative hearing, we held that the claimant had shown no unfairness or prejudice where he made no allegations that the

8

record as a whole was incomplete or inadequate and the ALJ's opinion was "quite thorough."  Kelley, 761 F.2d at 1540.

Here, the record as a whole is neither incomplete nor inadequate. (Id. at 121-77).  Instead, the record was sufficient for the ALJ to evaluate Graham's impairments and functional ability, and does not show the kind of gaps in the evidence necessary to demonstrate prejudice.

In addition, the ALJ's questioning brought out all aspects of how Graham's symptoms affected her.  He questioned Graham about whether she had additional medical evidence to include.  He asked her about her living arrangements and how she provided for herself and her baby, as well as about her education and school performance.  He questioned her about her medical condition and treatment, her symptoms and frequency, and the medication taken to control them.  He asked her how long she could sit and stand, how far she could walk, and how much she could lift.  He compared her capabilities with the functional requirements for light work. Furthermore, unlike the claimant in Brown, Graham was able to explain to the ALJ how her impairment affected her abilities.  The ALJ's opinion also thoroughly evaluated Graham's medical history. It detailed Graham's testimony and symptoms, described her functional limitations and daily activities, and then compared these with the functional requirements for light work.

Finally, Graham has failed to point to anything in the record which suggests that additional medical evidence specific to her situation might be gathered, nor has she alleged undiscovered facts or an undeveloped avenue of inquiry. Graham has failed to demonstrate evidentiary gaps in the record which have resulted in prejudice sufficient to justify a remand to the Secretary.

IV.

AFFIRMED.