Tywanda GILES, o/b/o Shaina
S. DOWDELL, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

Civil Action No. 01–M–674–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Jan. 28, 2002.

Harold Scott Patrick, Legal Services Corporation of Alabama, Opelika, AL, for plaintiff.

Julia J. Weller, United States Attorney's Office, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 1383(c)(3), Tywanda Giles ["Giles"], on behalf of Shaina S. Dowdell ["claimant"], brings this action to review a final decision by the Commissioner which denied the claimant's claim for Supplemental Security Income ["SSI"] (Doc. # 1). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED.

## I. PROCEDURAL BACKGROUND AND FACTS

The claimant was born on 25 July 1990, and was nine years old at the time of the administrative hearing (R. 90). She alleged a disability onset date of 19 November 1997 (R. 91–93), due to a learning disability (R. 118). On 21 November 1997, Giles, the claimant's mother, protectively filed an application for SSI benefits on the claimant's behalf (R. 91–93). The claims were denied initially and upon reconsideration (R. 43–46, 52–55).

Following an administrative hearing, the ALJ denied the claimant's request for benefits in a decision dated 19 November 1999 (R. 9–25). On 11 April 2001, the Appeals Council denied the claimant's request for review (R. 5–7); thus, the hearing decision became the final decision of the Commissioner of Social Security. On 6 June 2001, the claimant filed the instant action which alleges that the Commissioner's decision "contains errors of law, abuses of discretion, and is not supported by substantial evidence" (Doc. # 1, ¶ 10).

## II. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). This court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[1] *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the

---

1. In *Graham v. Apfel*, 129 F.3d at 1422, the Court of Appeals has stated that:

    Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

legal conclusions reached were valid." *Miles v. Chater*, 84 F.3d at 1400 (citations omitted).

## III.  DISCUSSION

### A.  Standard for Determining Disability

An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

The ALJ must evaluate the claimant's case, using the criteria set forth in 20 C.F.R. § 416.924, to determine first, whether the claimant is engaged in substantial gainful activity. If not, the ALJ next decides whether the claimant has a severe impairment. 20 C.F.R. § 416.924. If that severe impairment or combination of impairments meets or equals a listed impairment in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1 ["Listing"] and "it meets the duration requirement, we will find that you are disabled." 20 C.F.R. § 416.924.

### B.  The ALJ's Findings

Within the structure of the sequential evaluation process, the ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity ["SGA"][2] since the protected filing date (R. 22).

2.  The claimant has the medically determinable severe impairment of borderline intellectual functioning; however she does not have an impairment or combination of impairments that meets or medically or functionally equals in severity one set forth in Appendix 1, Subpart P, Regulation No.4 (R. 22).

3.  The claimant's subjective allegations are not credible (R. 22).

4.  The claimant has the residual functional capacity ["RFC"] to perform the full range of sedentary work and has no non-exertional limitations (R. 22, 23).

5.  The claimant's impairments do not result in "marked and severe" functional limitations (R. 22).

As a result of his evaluation, the ALJ concluded that the claimant did not have a "disability," as defined in the Act, at any time through the date of his decision. Accordingly, she was further found to be ineligible for any benefits (R. 22).

### C.  Application of Standard to Claimant

Based upon the ALJ's findings, the claimant survives the first two steps of the test because she is not engaged in "substantial gainful activity," and her conditions are "severe." The claimant, however, did not survive the final step of the test because the ALJ determined that her impairments were not sufficiently severe to meet or medically equal the severity of any listed impairment set forth in the governing regulations. The ALJ continued his analysis to evaluate the claimant's func-

---

2.  Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.

tional limitations and determine whether the limitations are disabling.

### D. Mental Retardation

The claimant contends that the ALJ erred by not finding that she meets all the requirements of 20 C.F.R. Pt 404, Subpt. P, App. 1, § 112.05(D) ["Section 112.05(D)"][3] (Doc. # 13, p. 4). Specifically, the claimant argues that the ALJ should have given her IQ scores from a 1997 exam "more weight" (Doc. # 13, p. 5).

The claimant's administrative record includes two IQ tests: one administered by Gail Gaillard ["Gaillard"], a school psychometrist, on 9 October 1997 (R. 167–172) and one administered by Dr. Lee Stutts ["Dr. Stutts"], a licensed psychologist, on 20 March 1998 (R. 188–189). Upon taking the Wechsler Intelligence Scale for Children–Third Edition ["WISC–III"],[4] the claimant scored 69 in verbal IQ, 71 in performance IQ, and a full scale IQ score of 68 (R. 171). Gaillard noted that "[the] test results can be taken as a valid estimate of [the claimant's] current level of intellectual functioning" and concluded that the claimant's "general cognitive ability, as estimated by the WISC–III, is intellectually deficient" (R. 167, 170).

On the WISC–II, administered by Dr. Stutts, the claimant scored 71 in verbal IQ, 83 in performance IQ, and a full scale IQ

of 75 (R. 189). Dr. Stutts noted that the claimant "did remember taking the test last fall and some practice effect may have occurred" (R. 168). Dr. Stutts indicated that the claimant "tested in the borderline range of intellectual functioning" and advised that "previous test results from school should be obtained to corroborate this impression" (R. 189).

In evaluating the claimant's IQ scores, the ALJ noted that "[a]t first glance, it might be argued that the claimant has mild mental retardation based on recent intelligence testing" (R. 16).

> I have considered this contention but find it to be without merit. The psychological test administered in October 1997, was administered by a school psychomotrist [sic]; not a psychologist. 20 CFR 416.913 lists what are acceptable medical sources for establishing disability. Psychologists are included as acceptable medical sources, but school psychometrists are not included as acceptable medical sources. As such, the test administered in 1997, is not entitled to the same weight as the tests given by psychologists, and the examiner's opinion is not entitled to the same weight as those of examining psychologists.

(R. 16). The ALJ further concluded:

> [i]n light of the discrepancies between October 1997 scores and the evaluation

---

**3.** Section 112.05(D) provides that:
112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
\* \* \*
D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing addi-

tional and significant limitation of function. . . .

**4.** Gaillard also administered the Wechsler Individual Achievement Test ["WIAT"], which assessed the claimant's current level of functioning in specific academic areas (R. 169). Gaillard noted that the claimant's "overall achievement was in the below average range" (R. 170).

performed by Dr. Stutts, who is a licensed psychologist, and as the October 1997 test was not administered by an acceptable medical source, I give it less weight in reaching a conclusion on the issue of disability in this case. Thus, I find that the claimant functions in the borderline range of intelligence and that she does not meet the requirements of said listing.

(R. 17).

■ The court finds that it was reasonable for the ALJ to place less weight on the results of the claimant's October 1997 WISC–III test because it was not administered by an acceptable medical source. *See Edwards v. Massanari*, 2001 WL 929739, at *1 n. 5 (S.D.Ala.2001) (noting that a psychometrist is not an acceptable medical source under 20 C.F.R. 416.913). Moreover, the objective medical evidence indicates that the claimant does not suffer from disabling mental retardation.

On 10 March 1998, Dr. Terry Vester ["Dr. Vester"], a consultative examiner, examined the claimant and found that she was in no acute distress, had clear lungs, a normal physical examination, and appropriate speech and language for her age (R. 186–187). Dr. Vester diagnosed the claimant with "a mild degree of mental slowness" (R. 187). Furthermore, the claim-

ant's school records[5] indicate that the claimant is not disabled under Section 112.05(D). The ALJ noted that "the claimant is enrolled in EMR classes as well as some regular classes and is making passing grades" (R. 18).

[The claimant's] cumulative school folder shows that she obtained the following grades during the last school year, (i.e., 1998/1999). She received all S's or satisfactory in Physical Education, Social Studies and Science. She received B's in Reading and Mathematics. She received A's in Language and Spelling.

(R. 15). On 10 March 1998, the claimant's special education teacher Mary Catrett ["Catrett"], noted that the claimant "is functioning below normal children her age ... she is reading below grade level. The teacher may need to go slower, repeat directions" (R. 133). Catrett further noted that "there were no physical problems with the claimant" (R. 155). Sharon Vinson ["Vinson"], another teacher of the claimant, noted that "[the claimant] is somewhat different academically. She requires modified work and much independent assistance." (R. 155). Vinson also noted that the claimant has no physical problems (R. 154).

This court does not re-weigh the evidence. It sits instead to determine wheth-

---

5. The claimant also asserts that

    the decision of the ALJ would have to be reversed to determine the validity of the grades that [she] supposedly achieved in order to determine if they are truly reflective of her actual learning ability or whether they were scaled for some reason, possibly to 'socially promote' [her] to the next grade.

(Doc. # 13, p. 7). The claimant's contention is a blind assertion of error lacking in evidentiary support. There is nothing in the record which supports this assertion. The claimant refers to a 18 March 1998 letter from Catrett,

which was *only* submitted to the Appeals Council (Doc. # 3, p. 7). Review in the Court of Appeals is governed by the principle that "when the [Appeals Council] has denied review, [the court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir.1998). Accordingly, this court limits its review to the evidence that was before the ALJ and will not consider new evidence, including Ms. Catrett's letter. On that basis, the court finds that the claimant's contention is without merit.

er substantial evidence supports the ALJ's decision. In this case, the evidence meets that standard objectively. Based upon the objective medical evidence, it was reasonable for the ALJ to question or discredit the claimant's WISC–III test results from the October 1997 test.

### E. Non–Severe Impairments

The claimant contends that the ALJ "improperly found that [her] physical impairments were non-severe" (Doc. # 13, p. 8). The claimant concludes that the ALJ's finding of her non-severe impairments "is not supported by the evidence of record" (Doc. # 13, p. 8–9). The ALJ found that the claimant "has the following medically determinable severe impairment: borderline intellectual functioning" (R. 22).

> [t]he claimant alleges chronic bronchitis, stomach aches, headaches, ear infections, vomiting and allergies. Having considered the evidence, I find that these complaints are not supported by objective findings which demonstrate a medically determinable impairment which has lasted or is expected [to last] for one continuous year or more, and thus, are not severe impairments.

(R. 15). The court's review of the objective medical evidence compels the same conclusion. The narrow medical evidence includes records, dated 9 April 1996 to 11 April 1998, from various healthcare practitioners at Pediatric Associates of Alexander City (R. 190–198). On 9 April 1996, the claimant was diagnosed as having allergic rhinitis [6]/sinusitis [7] and was prescribed medication (R. 195).

On 19 July 1996, she was treated for diarrhea, fever and headache (R. 193). She was diagnosed as having "viral [symptoms]" and was prescribed medication (R. 193). By the next day, she indicated that she did not have diarrhea, fever, or an ear ache; and it was noted that she was "doing much better" (R. 193). On 20 November 1996, four months later, she was presented with a sore throat and was diagnosed with strep throat (R. 194). She was prescribed Penicillin (R. 194).

During 1997, she was treated only twice, once for nasopharyngitis [8] on 25 March (R. 194) and once for bronchitis on 20 November (R. 192). During 1998, she was treated twice on 10–11 April, for strep throat and scarlatiniform [9] (R.190). She was prescribed Amoxicillin for a ten day period (R. 190).

This medical evidence does not establish that the claimant's alleged recurrent stomach aches, bronchitis and allergies are severe impairments. Although the claimant has been treated for these conditions, the medical records do not document any **long-term** or **sustained** treatment for these conditions nor any restrictions upon the claimant's functioning as a result of these conditions. A significant additional conclusion is that these conditions were not denominated as "serious" by the claimant's medical providers. None of the physicians

6. Rhinitis is defined as "inflammation of the mucous membrane of the nose." Webster's Medical Desk Dictionary 620 (1986).

7. Sinusitis is defined as "inflammation of a sinus of the skull." Webster's Medical Desk Dictionary 656 (1986).

8. Nasopharyngitis is defined as "inflammation of the nose and pharynx." Webster's Medical Desk Dictionary 465 (1986).

9. Scarlatiniform is defined as "resembling the rash of scarlet fever." Webster's Medical Desk Dictionary 637 (1986).

who examined or treated the claimant specifically diagnosed the claimant with chronic bronchitis, a severe stomach impairment, or recurring allergies. Accordingly, the court finds that the ALJ did not err in failing to find that the claimant's alleged recurrent stomach aches, bronchitis and allergies are severe impairments.

## IV. CONCLUSION

The evidence of record substantially supports the conclusions of the ALJ. Accordingly, the court concludes that the ALJ's decision is based on substantial evidence and that this case should be affirmed.