Teresa **JOHNSON** o/b/o Dylan Johnson, Plaintiff,

v.

Jo Anne B. **BARNHART**, Commissioner of Social Security, Defendant.

No. 3:02 CV 970–M.

United States District Court, M.D. Alabama, Northern Division.

May 14, 2004.

---

4. *Coker v. Amoco, supra,* has been superceded by statute as stated in *Wilson v. General Motors Corp.,* 888 F.2d 779 (11th Cir.1989).

Darryl W. Hunt, Clark & James, LLC, Birmingham, AL, for Plaintiff.

Jo Anne B. Barnhart, Baltimore, MD, pro se.

Leura Garrett Canary, Montgomery, AL, for Defendant.

### MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Teresa Johnson, the mother of claimant Dylan W. Johnson ["Johnson"] filed this action on behalf of her minor son, pursuant to Title XVI of the Social Security Act seeking review of a final decision by the Commissioner of Social Security ["Commissioner"](Doc. # 1). Upon review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED for the reasons set forth herein.

## I. PROCEDURAL BACKGROUND AND FACTS

Johnson was born on 24 August 1991 (Doc. # 10, p. 3). His mother waived her right to an administrative hearing on his behalf (R. 27). However, he was 11 years of age at the time that the Administrative Law Judge's ["ALJ"] decision was made.

The Administrative Law Judge ["ALJ"] denied Johnson's request for benefits in a decision dated 15 October 2002 (R. 16–20), and on 24 February 2003, the Appeals Council denied his request for review (R.

3–4). Therefore, the hearing decision became the final decision of the Commissioner of Social Security. On 22 September 2003, Johnson filed the instant action (Doc. # 1).

According to Johnson's mother, he is disabled because he has seizures (R. 22). "[H]e has headaches, and ever since he has taken medicine for it he complains with a stomach ache" (R. 39). The headaches have lasted for one year, occurring every one to two days for a duration of approximately 20 seconds each, until he started a medication regimen for them from September 2001 to June 2002 (R. 63). His alleged disability onset date is 1 July 2001 (R. 35), when he was 9 years of age. However, Mrs. Johnson noted, on 11 April 2002, that

> [d]ylan had gotten hit in the head when he was 6 years old with a stick, very hard, now that he has seizures it causes him to have black out spells and dizziness and very bad headaches. After he had been on medicine for about 3 or 4 months he had another spell with his head.

(R. 47A–48).

Mrs. Johnson has advised that her son's medical personnel include professionals at the Russell Hospital and Dr. Sellers in Alex City, Alabama (R. 40). The records reflect an EEG (also referred to as a "brain wave test") and an MCR/CAT SCAN of his head performed on 1 July 2001 (R. 43). Mrs. Johnson also noted for the record that her son was seen by the same medical professionals in August 2002 (R. 65). However, the results of those visits were not included in the record. Mrs. Johnson also completed the Social Security Administration's "Function Report–Child Age 6 to 12th Birthday" (R. 53–62). This report noted that Johnson uses glasses and/or contact lenses (R.54). However, he (1) does not have problems hearing (R.54); (2) is not "totally unable to talk" (R.55); his "ability to communicate [is not] limited" (R. 56); and his "ability to progress in learning [is not] limited" (R. 57).

When queried as to whether her child's physical abilities are limited, whether his impairment affects his behavior with other people, whether his impairment(s) affects his ability to help himself and cooperate with others in taking care of personal needs, and whether he has the ability to pay attention and stick with a task, Mrs. Johnson responded that she was "not sure" (R. 58). However, when posed a total of thirty-six sub-questions to assess these abilities, she advised of problems with less than a third of them (R. 58–62). She did note, however, that her son

> [g]ets very angry and upset over nothing. Does not take much to get him fusing [sic] and arguing … We are scared to let him play sports, because we are afraid he will get hit in the head or have a spell on the field … He cannot take criticism or correction, if you try he looks down on himself and thinks he can't do anything right or he has to have someone doing something with him at all times. Or he gets very frustrated … The only way he finishes his homework is if we sit down beside him and make sure he finishes it and when he gets stuck on a question we have to give him the answer or he will sit there and cry and scream and throw things because he can't get the answer for himself.

(R. 59–61).

Johnson's teacher completed an evaluation of his school performance (R. 74–81). Her evaluation focused in the areas of (1) "acquiring and using information"; (2) "attending and completing tasks"; (3) "interacting and relating with others"; (4) "moving about and manipulating objects"; and (5) "caring for himself or herself" (R. 74–

79). In each of the areas, generally and with regard to specific task inquiries, she noted "no problem" (R.74–79). She noted that he does not miss school frequently due to illness, "nothing interferes with function at school," and as additional comment, "I haven't seen any change in Dylan. He is a wonderful student!" (R. 80–81). His grades ranged anywhere from 91–100 on his periodic cards that were included in record (R. 67–68).

On 23 May 2002, Alabama's Disability Determination Service ["ADDS"] made some findings and summarily concluded that Johnson's seizures were an impairment (R. 97). He has "no limitation" in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself. ADDS did note "less than marked" limitation in the area of health and well-being (R. 100–101).

In a notice received by an ALJ in Montgomery, Alabama on 23 August 2002, Mrs. Johnson waived her right to a hearing before an ALJ (R. 27). Nonetheless, the Social Security Administration forwarded a standard letter[1] to the Johnsons dated 23 August 2002, with enclosed attachments, including a leaflet entitled "Social Security and Your Right to Representation" and as well, "a list of groups that can help you find a representative" (R. 27A–31). The letter was signed by a Chief Administrative Law Judge, and the first page of the letter contained a subsection with a bolded heading entitled "Your Right to Representation" (R. 27A).

Another letter was sent to the Johnsons one week later, dated 30 August 2002 (R. 33). This letter acknowledged the waiver to the right to a hearing and as well,

addressed the issue of counsel (R. 33). Chief ALJ Thigpen wrote:

> When you completed your Request for Hearing, you stated that you did not wish to appear personally at a hearing and requested a decision based on the evidence currently in your file. The main purpose for a hearing is to give you an opportunity to appear personally before an official authorized to make a new and independent determination on your case. **You are entitled to have a representative such as an attorney help you present your case,** but the main purpose is to take your testimony and the testimony of any other witnesses that you may have.
>
> Before making a decision based only on the evidence in the file, I would like to give you an opportunity to reconsider whether or not you would like to appear personally at a hearing. Even though you waive the right to appear, the Administrative Law Judge may schedule and conduct a hearing if he deems it necessary.
>
> If you wish to appear, please indicate your choice below and return this letter to me in the enclosed envelope which requires no postage. If you still do not wish to appear at a hearing, please complete the attached "Waiver of Right to Oral Hearing" form with your reason(s). Please sign and date the form and return it to me no later than September 15, 2002.

(R. 33)(Emphasis added).

A handwritten notation has since been made to the letter reads, "NO RESPONSE" (R. 33). According to Johnson's mother, "the ALJ's failure to inform her of her right to counsel violated her

---

1. This letter did not acknowledge that Johnson had waived the right to a hearing by an Administrative Law Judge.

right to due process under the law and was reversible error" (Doc. # 10, p. 7).

## II. STANDARD OF REVIEW

 The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983)). This Magistrate Judge must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[2] *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater,* 84 F.3d at 1400 (citations omitted).

## III. DISCUSSION

### A. Standard for Determining Disability for Children

The standard for determining disability for children is governed by 42 U.S.C. § 1382c(a)(3)(C)(i), which states that:

An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

This standard is different from the standard applied to adults and when evaluating the case of an adolescent claimant, criteria

set forth in 20 C.F.R. § 416.924 is used. The first determination that has to be made is whether the claimant is engaged in substantial gainful activity. If not, the ALJ decides second whether the claimant has a severe impairment. 20 C.F.R. § 416.924. If there is a severe impairment or there are severe impairments and that severe impairment or combination of impairments meet or equal a listed impairment in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1 ["Listing"] and "it meets the duration requirement, we will find that you are disabled." 20 C.F.R. § 416.924.

### B. The ALJ's Findings, the Claimant's Contentions, and the Commissioner's Position

Although Mrs. Johnson has grounded her request for review on the Commissioner's failure to advise her of her right to counsel, she also challenged the ALJ's development of the record. In that connection, the ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. "The claimant has not engaged in substantial gainful activity since the alleged onset date" (R. 19).

2. "The claimant has the following medical determinable severe impairment: seizure disorder" (R. 19).

3. "The claimant does not have an impairment or combination of impairments that meets or medically or functionally equals in severity one set forth in the Listing of Impairments" (R. 19).

4. "The claimant's impairments do not result in 'marked or severe' functional limitations" (R. 19).

**2.** In *Graham v. Apfel,* 129 F.3d at 1422, the Court of Appeals has stated that:

Substantial evidence is described as more than a scintilla, and means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

5. "The claimant is not disabled within the meaning of the Social Security Act" (R. 19).

Johnson disagrees with the Commissioner's findings and rather, asserts that (1) the ALJ failed to develop the record; and (2) the ALJ violated his due process rights by failing to advise of the right to counsel (Doc. # 10, p. 6). The Commissioner disagrees with both of Johnson's contentions, arguing that her decision is supported by substantial evidence.

## C. Application of the Standard to the Arguments of the Parties

Pursuant to the ALJ's decision, Johnson survives step one of the sequential evaluation process, because he is not engaged in any substantial gainful activity. He also survives step two, because he has a severe impairment, a seizure disorder. However, he does not survive step three, because his seizure disorder does not meet the equivalent of a listed impairment.

### 1. Development of the Record

█ Johnson contends that

[t]he administrative record is missing medical records after October of 2001 and school records after April of 2002. At the time of the hearing Plaintiff's prescribed medications were Depakote for seizures and Inderal for headaches (R. 64). The Inderal was prescribed in August 2002 *but information on this is not in the administrative record as there are no medical records after October of 2001 in Dylan's file.*

(R. 64)(Emphasis added).

In contrast, however, ALJ noted in his opinion that Johnson was on medication (R. 18) and he developed the record in substantial detail. The law in this Circuit is clear, and it does not support Johnson's arguments. The court agrees with Johnson that the ALJ is charged with developing a fair and full record. *Todd v. Heck-*

*ler*, 736 F.2d 641, 642 (11th Cir.1984). And indeed, the ALJ is bound to make every reasonable effort to obtain from the claimant's treating physician(s) all the medical evidence *necessary to make a determination.* 20 C.F.R. § 404.1512(d)(Emphasis added). However, the burden is on the *claimant* to prove that he is disabled. The regulations provide that:

In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means you must furnish medical and other evidence that we can use to reach conclusions about your impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis.

20 C.F.R. § 404.1512(a).

The ALJ met his burden in this case. He reviewed the evidence that he considered "necessary to make a decision." With regard to medical evidence, for example, the ALJ made the following findings:

The claimant has never sought mental health treatment. He has not been diagnosed with an attention deficit hyperactivity disorder or a mental disorder. He has not been prescribed any medication to improve his ability to concentrate or improve his behavior. Contrary to the allegations of Ms. Johnson ... the claimant's fifth grade teacher, described the claimant as a "wonderful student" who does not have any problems with acquiring and using information, attending and completing tasks (including focusing long enough to complete tasks, completing assignments, and working at a reasonable pace) interacting and relating to others, moving about or manipulating objects, or caring for himself. She went on to state that the claimant

does not frequently miss school (Exhibit 7E). School records show that since the claimant was prescribed medication, he missed only one day of school and was tardy on two occasions (Exhibit 6E).

(R. 12–13).

This analysis is a thorough one; it addresses Johnson's physical and mental conditions, his diagnoses, his treatment, his "reputation" in school, his physical capacities, and the impact of medication. It would be unreasonable to conclude that the ALJ did not give full consideration to every aspect of Johnson's status. Based on the evidence before the ALJ, he determined that Johnson is not disabled. That conclusion was consistent with the weight of the medical evidence; thus, it was not necessary to gather more records to make a decision. Johnson's argument in support of his contention that the ALJ did not fully and fairly develop the record hinges on the fact that

> [d]ylan's medical treatment form completed by Plaintiff indicates that he was seen by Dr. Sellers and by Russell Hospital in August of 2002. This information was received by the ALJ on September 5, 2002 more than a month prior to the decision (R.64–65). Pharmacy printout through April 20, 2002 was submitted also (R. 66).

(Doc. # 10, p. 4).

Even if the court assumes that the ALJ received valid, persuasive evidence a month before his decision, nothing in the record suggests that records created after 1 October 2002 would be of the nature to infer a disability. Although the claimant was aware that such records existed, Johnson failed to produce them and explain how, in light of them, he is disabled. While the ALJ must develop a full and fair record, Johnson must still carry his burden of persuading the ALJ that he is disabled.

In the absence of basic evidence of Johnson's medical condition after 1 October 2002, his argument may reasonably be construed as a request that this court reweigh the evidence. The court, however, is precluded by law and precedent from reweighing evidence. Instead, the court sits to determine whether substantial evidence supports the ALJ's decision. In this case, the ALJ's conclusions were premised upon an explicit finding that Johnson (1) had a history of seizures; (2) was receiving medication for his seizure disorder that had somatic side effects; (3) despite this fact, consistently maintained an average in school above 90%, only missed one day of school and was late only twice; (4) according to medical and educational personnel, had no marked limitations that would prevent full performance in the course of gainful activity; and (5) does not have a history of mental health treatment or disease of any kind.

Although review of medical records subsequent to 1 October 2002 for Johnson was within the ALJ's discretion, these circumstances did not require or mandate the inquiry, and Johnson proffered no reason to suggest that additional evidence would have been inconsistent with the materials already before the ALJ. Therefore, the court finds that the decision of the Commissioner should be affirmed on the issue of whether the ALJ erred in failing to develop the record fairly and fully.

### 2. Advising Litigants of the Right to Counsel

The claimant also contends that the ALJ's decision should be overruled, because the ALJ failed to advise the claimant of her right to counsel. Counsel for the claimant, who was hired subsequent to the issuance of the opinion, made the following argument:

The error is compounded when one considers the fact that not only was Plaintiff unrepresented, but that there was no hearing. The error is further compounded by the fact **that there is no indication that Plaintiff was advised of or waived her right to counsel.** Because the right to counsel is so significant, courts have consistently held that the ALJ must inform the claimant of her right to be represented and of the importance of counsel so that she may decide knowingly whether she wishes to waive this important right . . .

Since the ALJ did not see Plaintiff, he did not tell her in person about this important right. And since there is no waiver of counsel in the transcript, we can be certain that no one else did either. Plaintiff submits that she never waived her right to counsel. Plaintiff further submits that the ALJ's failure [to] inform [her] of her right to counsel violated her right to due process under the law and was reversible error.

(Doc. # 10, pp. 6–7).

Counsel's argument is logical, but its premise is fallacious. First, Mrs. Johnson *expressly* and *voluntarily* waived her right to a hearing (R. 27), thus precluding any personal encounter with the ALJ and any opportunity to advise her in person of her right to be represented by an attorney. While all persons have a right to counsel in administrative proceedings, the court cannot lawfully construct a requirement which requires agencies and administrative personnel to make personal contact with claimants to advise them. The written notice evidenced by the record is sufficient.

It is even more significant that Chief ALJ Thigpen sent two letters via U.S. Mail to the claimant and his mother, both of which conspicuously referenced Johnson's right to counsel. The first letter was sent to the Johnsons' home on 23 August 2002. Enclosed with the letter were a leaflet entitled "Social Security and Your Right to Representation" and "a list of groups that can help you find a representative" (R. 27A–31). Mrs. Johnson did not mention this letter in her responsive brief to the court; she did not deny receiving it, and there is no evidence that it was returned to the SSA.

Johnson alleges only a failure to receive a letter sent on 30 August 2002. According to the evidence, this letter was sent in addition to the first letter, and it requested Mrs. Johnson to reconsider her decision to waive her right to a hearing. In this letter ALJ Chief Judge Thigpen advised her, for a second time, that she was "entitled to have a representative such as an attorney help [her] present [her] case" (R. 33). This is the letter that she purportedly never received.

■ After a careful review of the evidence, the court concludes that, even if Mrs. Johnson did not receive the second letter, the record firmly establishes that she was advised of her right to have counsel. The absence of a waiver of counsel in the transcript is not a sufficient basis for concluding that there was not a waiver, and it certainly is not a ground for nullifying a clear, affirmative waiver.

The court finds no error in the ALJ's decision and finds as well that the decision is supported by substantial evidence and is the result of the appropriate legal standards. Therefore, the decision of the Commissioner is due to be AFFIRMED on the issue of whether Johnson's due process rights were violated as a result of failure to procure counsel.

## IV. CONCLUSION

For the reasons stated herein, it is hereby ORDERED that the decision of the Commissioner is AFFIRMED.

## FINAL JUDGMENT

Upon consideration of the Memorandum Opinion entered in this case on this date, it is ORDERED and ADJUDGED that judgment be and is hereby entered in favor of the Commissioner and against the plaintiff as a matter of law.