[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12351
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 8, 2010
JOHN LEY
CLERK

D.C. Docket No. 2:09-cv-01672-IPJ

L.R.M.,
by and through her mother and
next friend, Nettie McCracklin,

                                                                Plaintiff–Appellant,

versus

SOCIAL SECURITY ADMINISTRATION,
COMMISSIONER,

                                                                Defendant–Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 8, 2010)

Before BLACK, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

L.R.M., a young woman with borderline intellectual functioning, appeals from an order affirming the Social Security Administration's denial of her application for supplemental social security income (SSI) benefits. L.R.M.'s appeal raises three issues. First, whether substantial evidence supports the administrative law judge's (ALJ's) decision to deny L.R.M. benefits. Second, whether the ALJ failed to give appropriate consideration to an examining psychologist's opinion. And finally, whether the ALJ failed to fully and fairly develop the administrative record.

I.

When L.R.M. applied for SSI benefits, she was 19 years old and lived at home with her mother and three younger brothers. L.R.M. had an IQ of 65 and had not completed high school. The only job she had ever held (putting tags on clothes) lasted just three days. Because she believed that her daughter was disabled, L.R.M.'s mother had her apply for SSI benefits.

To establish that she has a disability that entitles her to SSI benefits, L.R.M. has to show that she has an impairment that prevents her from performing substantial gainful activity for 12 months or more. 42 U.S.C. § 1382c. The Social Security Administration uses a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The agency first considers the applicant's work

history.  If the applicant is not gainfully employed, the agency determines the severity of her impairment.  If the impairment is severe, the agency determines whether it also qualifies as an impairment listed in the social security regulations.  If it does, the agency considers the applicant's "residual functioning capacity" and whether she can still perform "past relevant work."  *Id.*  Finally, if the applicant cannot perform past relevant work, the agency considers whether she can adjust to other work.  To establish disability, the claimant must meet all of these criteria.

Here, the ALJ found that L.R.M. did not have any past relevant work history and that her borderline intellectual functioning qualified as a severe impairment.  But because L.R.M. did not establish that she had a listed impairment, the ALJ determined she did not qualify for SSI benefits.

## II.

We review an agency's decision to determine whether it was supported by substantial evidence.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Substantial evidence is that which a reasonable person would take as sufficient to support a conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  It is more than a scintilla but need not be a preponderance.  *Dyer*, 395 F.3d at 1210.

L.R.M. argues that the ALJ's decision was not supported by substantial evidence because her short-term-memory impairment satisfies the listing criteria.

3

She also argues that she meets the listing criteria because she suffers from marked restrictions in daily living, social functioning, and maintaining concentration, persistence or pace. We disagree.

Because L.R.M.'s IQ was above 59 but below 70, to have a listed impairment she would need to have an additional limitation to qualify for SSI benefits. One such limitation would be a physical or mental impairment that imposed an additional and significant work-related limitation or function. 20 C.F.R. pt. 404, subpt. P, Appx. 1, § 12.05(c). Another would be marked restrictions in at least two of the following areas: daily-living activities; social functioning; maintaining concentration, persistence or pace. *Id.* § 12.05(d).

First, although L.R.M. argues that her short-term-memory problem qualifies as an additional mental impairment, the psychologist's report indicates that her memory problems are related to her borderline intellectual functioning. Because the evidence suggests that her memory problems are not a discrete, additional impairment, the ALJ's finding that L.R.M. did not meet § 12.05(c)'s requirements is supported by substantial evidence, and may not be disturbed.

The ALJ's finding that L.R.M. did not meet § 12.05(d)'s requirements is likewise supported by substantial evidence. L.R.M.'s evaluation indicated that she had only moderate restrictions in daily living, social functioning, and maintaining

4

concentration, persistence or pace.  Furthermore, at the hearing L.R.M. testified that she can prepare sandwiches and that she dresses herself.  And although she testified that she does not have any friends, she did say that she spends time socializing with family members and that she occasionally speaks with her sister on the telephone.  She also said that she enjoys braiding other people's hair. Additional evidence showed that she could follow her doctor's orders and that she sought medical care of her own accord.  Her mother even testified that she could follow simple, spoken instructions.  This evidence is sufficient to support the ALJ's conclusion that L.R.M. had only moderate restrictions in daily living, social functioning, and maintaining concentration, persistence or pace.[1]

L.R.M. also argues that the ALJ erred by failing to give controlling weight to the opinion of John Neville, the consultative psychologist who examined her. But this argument is misplaced as the ALJ wrote in his report that he gave "great weight to the opinion[] of Dr. Neville."  In any event, Neville's opinion was that L.R.M. did not have a listed impairment.

Lastly, L.R.M. argues that the ALJ failed to fully and fairly develop the

---

[1]  Because the ALJ's conclusion that L.R.M. did not have a listed impairment is supported by substantial evidence, and L.R.M.'s failure to satisfy that criterion means she is not entitled SSI benefits, we need not address L.R.M.'s argument that she was not allowed to pose a fair hypothetical to the agency's vocational expert.  That issue  would only be relevant had L.R.M. met all of the other criteria necessary to qualify for SSI benefits.

administrative record by not calling for further medical review.  An ALJ has a duty to ensure that a full and fair record is developed.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  To determine whether an ALJ has fulfilled this duty, we look for evidentiary gaps in the record that result in unfairness or clear prejudice.  *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

Here, we first note that L.R.M. underwent a consultative examination.  The conclusions from Neville's examination are consistent with both L.R.M.'s and her mother's testimony, and L.R.M. does not elaborate on how the record was insufficient without a second examination.  And because L.R.M. did not allege a physical impairment, and there is no evidence in the record that L.R.M. was physically impaired, there was no need to order a physical examination.  Given our inability to identify any evidentiary gaps in the record, much less any gaps that resulted in unfairness or clear prejudice, we cannot say that the ALJ did not sufficiently develop the administrative record.

The district court's order is **AFFIRMED.**