[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14020
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-00195-GRJ

ALFRED TOWNSEND,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 7, 2014)

Before WILSON, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Alfred Townsend appeals the magistrate judge's order affirming the Social Security Administration's denial of disability benefits.  On appeal, Townsend claims (1) that the Administrative Law Judge (ALJ) insufficiently developed the record to determine whether Townsend could perform his past relevant work by failing to ask enough questions related to his residual functional capacity (RFC) and (2) that the ALJ's failure to sufficiently inquire into Townsend's physical limitations was "overtly prejudicial."  After careful review, we reject both claims and affirm.

Prior to filing for disability benefits, Townsend had been hospitalized several times in a nearly two year period for a severe injury to his right eye, for pain and infections in his right foot, and for pain in his back and knee.  Multiple physicians completed RFC evaluations of Townsend, and the physicians' conclusions varied to some extent.  The most favorable portions of each report, from Townsend's perspective, indicate that he could at least: frequently lift ten pounds and occasionally lift twenty pounds; sit and stand for six hours in an eight hour work day; frequently climb, kneel, crouch, and crawl; and occasionally stoop and balance.  They further found that he had no manipulative, communicative, or environmental limitations except that he should avoid concentrated exposure to hazards such as working at significant heights.  Finally, the physicians concluded that he had severely limited vision in his right eye and hypertension and diabetes.

2

At the administrative hearing before the ALJ, Townsend confirmed that he could lift twenty pounds, but not often.  Townsend also stated that his vision was poor, that he had pain in his mouth stemming from the same incident that injured his eye, tendinitis in his knee, and chronic back pain.  When the ALJ followed up by asking what treatment he received for this pain, Townsend's non-attorney representative who had been questioning Townsend stated: "Your Honor, I'm— I'm not sure if the—if the Claimant would be able to offer any additional helpful testimony."  Townsend and his representative stated that he was disabled based on the loss of vision in his right eye, the above-described physical impairments, and chronic pain.

At the time of his hearing before the ALJ, Townsend was in his mid-fifties and had most recently worked at a carwash where he answered the phone and washed cars.  The vocational expert at the hearing classified this job as medium work, which someone with Townsend's limitations, as described in multiple RFC evaluations, could perform.  Townsend offered no evidence to contradict the RFC evaluations performed by the physicians but merely claimed that he was disabled based on the limitations described above.  Faced with conflicting conclusions about Townsend's ability to perform past relevant work, the ALJ found the physicians' RFC evaluations to be more credible than Townsend's self-assessment. In particular, the ALJ placed significant weight on: (1) objective medical evidence

that Townsend was able to perform medium work; (2) physicians' reports of callousing on Townsend's extremities, which were inconsistent with the disabilities he alleged but consistent with the ability to perform medium work; and (3) Townsend's poor work history, which weakened his credibility.

Ultimately, the ALJ concluded that although Townsend suffered from several severe impairments, his RFC permitted him to perform medium work, including his past relevant work at the carwash. In any event, Townsend had certainly not met his burden of proving the contrary. Accordingly, the ALJ denied benefits. Townsend challenges this finding because the ALJ did not ask enough questions about Townsend's impairments to fully and fairly develop the record. Specifically, Townsend complains that the ALJ only asked about his ability to lift but not his ability to sit, stand, or walk—all of which would be necessary to perform his previous work. This, Townsend claims, was overtly prejudicial.

We have held that the ALJ has the "duty to develop the record fully and fairly." *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam). Claimants have a statutory right to counsel at hearings before an ALJ, and where the right has not been waived, the ALJ's "obligation to develop a full and fair record rises to a special duty." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam). But even in cases involving this special duty, "a showing of prejudice must be made before we will find that a hearing violated claimant's

4

rights of due process and requires a remand to the Secretary for reconsideration."
*Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (per curiam).

Prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.* at 1540. In determining whether sufficient prejudice exists to warrant remand, "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham*, 129 F.3d at 1423.

In *Brown v. Shalala*, we found prejudice based on the ALJ's failure to obtain records which were the subject of testimony, to acquire a report which he stated he would review, and to question an available witness when the claimant herself was unable to explain how her disabilities prevented her from working. 44 F.3d 931, 935–36 (11th Cir. 1995) (per curiam). By contrast, in *Kelley*, we held that no prejudice resulted when there was no suggestion that the record was incomplete or inadequate and claimant's assertion that he would have benefitted from a more extensive hearing was speculative. 761 F.2d at 1540–41. Similarly, in *Graham*, "the record as a whole [was] neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Graham's impairments and functional ability, and [did] not show the kind of gaps in the evidence necessary to

demonstrate prejudice." 129 F.3d at 1423. The ALJ extensively questioned Graham, Graham was able to offer helpful explanations, the ALJ thoroughly examined Graham's medical history, and the ALJ's opinion thoroughly compared symptoms and limitations with functional requirements for previous work. *Id.*

Here, Townsend has not demonstrated that the record is insufficient. In *Wilson*, the record, "which included the opinions of several physicians . . . , was sufficient for a decision and additional expert testimony was unnecessary." 179 F.3d 1276, 1278. The record here also includes the opinions of several physicians, and in *Wilson*, we found that even additional *expert* testimony was unnecessary. Townsend claims the ALJ should have questioned him further. But if additional expert testimony is unnecessary in the face of multiple physicians' opinions, additional lay testimony from a witness the ALJ has already concluded lacks credibility would be even less necessary.

Even if we assume the record was insufficient, however, Townsend has not shown prejudice from the ALJ's decision not to ask Townsend about his ability to sit, stand, and walk. To the extent that Townsend is basing his "overt prejudice" claim on *Graham*, which recognized that extensive questioning undermines a claim of prejudice, Townsend misunderstands that case. In *Graham*, the ALJ found questioning to be helpful, as claimant was able to provide useful information. Here, by contrast, Townsend presumably would have asserted a more limited

6

ability to work than the physicians' RFC reports—though he does not even assert this point on appeal.  But the ALJ clearly found Townsend's bare assertions of his disability to be less credible than multiple physicians' reports.  Therefore, to the extent questioning was less extensive than in *Graham*, it was brief because it would not have been helpful or credible, and even now, Townsend has not suggested what more the ALJ might have learned from further questioning.  In fact, Townsend's representative stated that he had no further helpful testimony.

Not only was further testimony from Townsend unlikely to help his cause, but unlike in *Brown*, there is no suggestion that other available witnesses would have helped Townsend's case.  In fact, the opposite is true, as the physicians would have provided evidence undermining Townsend's claim, had they been called to testify.  It was unnecessary to call them because their reports were available to the ALJ.  Therefore, the ALJ had all the relevant evidence before him such that there were no evidentiary gaps when he made his decision.  And while the ALJ did not extensively question Townsend, Townsend had nothing else to offer.  Just as in *Graham* and *Kelley*, we find no prejudice here because the ALJ reviewed the relevant medical information and prepared a thorough opinion explaining how Townsend could perform his past relevant work despite his symptoms.

In short, the record was sufficiently developed, and even if it was not, no prejudice resulted from any deficiencies that may have existed.

**AFFIRMED.**