Sharon **ASHFORD**, Plaintiff,

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

No. 1:03–CV–510–M.

United States District Court,
M.D. Alabama,
Southern Division.

Oct. 5, 2004.

**1190**

Georgia H. Ludlum, Law Offices of Georgia H. Ludlum, Dothan, AL, for Plaintiff.

Martha Ann Miller, Leura Garrett Canary, U.S. Attorney's Office, Montgomery, AL, Frank V. Smith, III, Chief Counsel, Kansas City, MO for Defendant.

### MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Claimant Sharon Ashford ["Ashford"] has filed this action seeking review of a final decision by the Commissioner (Doc. # 1) pursuant to §§ 405(g) of the Social Security Act (Doc. # 21, p. 1). Upon review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be REVERSED and REMANDED for the reasons set forth herein.

### I. PROCEDURAL BACKGROUND AND FACTS

Ashford initially petitioned for supplemental security income under Title II and Title XVI of the Social Security Act on 20 February 1991 (R. 18). She was granted disability due to a "history of schizoaffective disorder and essential hypertension" (R. 18). Her disability status was re-evaluated (R. 86), and a hearing officer determined that she was no longer disabled on 13 September 1999 (R. 94). She appealed the decision and requested a hearing before an Administrative Law Judge ["ALJ"](R. 18).

The hearing was conducted on 6 December 2000 in Dothan, Alabama (R. 18). Although advised of her right to representation, she elected to proceed *pro se* (R.82). The ALJ issued an adverse decision on 31 January 2001 (R. 18–27). The Appeals Council denied her petition for review, rendering the ALJ's decision the Commissioner's final determination (R. 5–7). This lawsuit followed on 13 May 2003 (Complaint, Doc. # 1).

By Ashford's own account, she is no longer able to work because of her "nervous condition" (R. 111). It keeps her from working because she had a "nervous breakdown—hit a man with scissors at work—could not control [her]self. [She] stayed hyper all the time [and] needs medicine to keep calm" (*Id*). Ashford last worked on 10 September 1990 (R. 77). She had to stop working, because "the doctor stop[ped] me from work on the count of my bipolar disorder because of the medicine I take" (R. 130).

Ashford was born on 22 September 1959 and, she was 41 years of age at the time of her most recent hearing (R. 77). She has a high school education and has been employed in varied labor positions between 1983 and 1990 (R. 115). For example, she has worked in a fast food restaurant, making sandwiches; in a manufacturing company's shipping department, packing pajamas; and in a chicken factory, skinning

and grading chicken thighs (*Id*). She was not required to use machines, tools, and equipment, use technical knowledge and skills, or supervise others in any of these positions (*Id*). In addition to her education and work experience, she also received specialized vocational training in cosmetology and printing (*Id*).

## II. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). Rather, the court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[1] *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater*, 84 F.3d at 1400 (citations omitted).

## III. DISCUSSION

### A. Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that he is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must evaluate the claimant's case using this sequential evaluation process, *Ambers v. Heckler*, 736 F.2d 1467, 1469 (11th Cir.1984); *Williams v. Barnhart*, 186 F.Supp.2d 1192, 1195 (M.D.Ala.2002). The steps are as follows:

1.  If the claimant is working or engaging in substantial gainful activity, he is not disabled. However, if the claimant is not working or engaging in substantial gainful activity, the Court must consider whether the claimant has a severe impairment.

2.  If the claimant does not have a severe impairment, he is not disabled. A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the Court must then consider whether the impairment has lasted or is expected to last for more than twelve (12) months.

3.  If a claimant's impairment has lasted or is expected to last for a continuous period of twelve (12) months or more and it is either included on or equivalent to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled. If neither of the above conditions, when considered in association with the continuity requisite of twelve (12) months, is

---

1. In *Graham v. Apfel*, 129 F.3d at 1422, the Court of Appeals has stated that:

    Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

deemed true, the ALJ must go on to step 4 of the evaluation sequence.

4. If it is determined that the claimant can return to previous employment, considering his residual functional capacity ["RFC"] and the physical and mental demands of the work that he has done in the past, the claimant will not be considered disabled. If it is determined that the claimant cannot return to previous employment, the SSA must continue to step 5 in the sequential evaluation process.

5. If, upon considering the claimant's RFC, age, education, and past work experience, the SSA determines that the impairments determined do not preclude the claimant from performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, she/he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 et seq. and/or 42 U.S.C. §§ 1381. If, however, it is determined that there are not a significant number of jobs the claimant can perform available in the national economy and the impairment meets the duration requirement, the claimant will be considered disabled.

*See* §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).

## B. The ALJ's Findings

The ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. Ashford is not engaged in any substantial gainful activity (R. 25).

2. Ashford has "experienced medical improvement since the most recent favorable disability determination" (R. 25).

2. Ashford has the following severe impairments: "schizoaffective disorder, provisional; borderline intellectual functioning, degenerative joint disease, hypertension, and obesity" (R. 26).

3. Although Ashford has severe impairments, when considered individually and in combination, these impairments do not meet or equal in severity, any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 23, 26).

4. Ashford's subjective allegations of pain are not credible (R. 26).

5. Ashford does not possess the residual functional capacity to perform her past relevant work. However, she "retains the residual functional capacity to perform a range of light and sedentary, unskilled work activity" (R. 26).

6. Ashford is a younger individual with a high school education (R. 26).

7. Ashford is no longer disabled (R. 26).

## C. Application of the Standard

Based on the ALJ's findings, Ashford survives step one and step two of the sequential evaluation process, because she has not engaged in any substantial gainful activities since her amended disability onset date and she has severe impairments (R. 25–26). However, she does not survive step three, because her severe impairments, when considered individually and/or in combination with others, do not meet the equivalent of a listed impairment (R. 26). According to the ALJ, therefore, Ashford is not disabled within the meaning of the Act (R. 26).

Even if the ALJ determines that a claimant does not have a combination of impairments that meet the equivalent of a listed impairment at step three of his analysis, there can nevertheless be a finding of disability. Such a finding is triggered by the ALJ's assessment at step four, through a determination of the claimant's residual functional capacity ["RFC"].

In the instant matter, the ALJ assessed Ashford's RFC and found that she had the ability to perform "unskilled Light and Sedentary" work (R. 25). However, she cannot return to any past relevant work (*Id*). According to Ashford, the ALJ erred as follows:

1. He ignored the opinion of Ashford's treating physician, Dr. Fernando Lopez ["Dr. Lopez"] (Doc. # 21, pp. 5–8). He "erred in according 'little, if any,' weight to the opinion of the claimant's treating therapist," La-Shay Lomac.[2] (Doc. # 21, pp. 11–13);

2. He did not list bipolar disorder as a severe impairment or consider it in combination with other impairments. Therefore, he improperly concluded that her combination of impairments did not meet the equivalent of a listed impairment (Doc. # 21, pp. 8–9);

3. He erred in relying on a consulting psychiatrists' opinion regarding the nature and severity of Ashford's mental condition (Doc. # 21, pp. 9–11).

In response, the Commissioner argues that substantial evidence supports her decision (Doc. # 22, p. 5). For the reasons set forth herein, the Court agrees with Ashford.

## D. Analysis of Evidence

### 1. Bipolar Disorder

The record is replete with medical records spanning from 11 February 1988 to May 2000 (R. 167–516). Based on the issues that Ashford raised on appeal, however, only the findings related to bipolar disorder, or the lack thereof, will predominate the analysis herein.

Medical opinions contained in the record confirm that Ashford has bipolar disorder (R. 195, 319, 351, 362–65). However, the ALJ never analyzed the impact of Ashford's bipolar disorder on her ability to work. Indeed, he never accepted the fact that she suffers from the condition. This suggests that he did not properly consider the disease when determining that her combination of impairments did not meet the equivalent of a listed impairment.

The Commissioner argues that the "[p]laintiff's point [about bipolar disorder] is totally without merit," because the ALJ began his analysis by noting that " 'the claimant alleges that she continues to be disabled due to bipolar disorder' (Tr. 21)" (Doc. # 22, p. 7).

> The rest of the ALJ's decision contains his analysis of the medical evidence to support his conclusion that she was no longer disabled due to bipolar disorder. The ALJ's decision contains a detailed analysis of the evidence relating to the Plaintiff's mental impairment which clearly showed that she was no longer disabled due to bipolar disorder or any other mental impairment.

(*Id*).

This characterization is flawed. First, the ALJ never explicitly stated that Ash-

---

2. Ms. Lomac, Ashford's daily intensive therapist, worked under the direction of Dr. Lopez. She made assessments of how Ashford's im-

pairments affect her ability to work (Doc. # 21, pp. 11–13).

ford had bipolar disorder. He mentioned Ashford's "allegation" only in the first sentence of his evaluation of the evidence. Immediately thereafter, he stated generally that "the claimant was allowed disability insurance due to schizophrenia, paranoid and other psychotic disorders and personality disorder" (R. 21). While bipolar disorder is, admittedly, a personality disorder, he did not list either as a severe impairment in the body of his opinion.

At the very least, the ALJ should have explained how (and why) the weight of the evidence would not support a finding that bipolar disorder was a severe impairment, especially since a number of physicians noted either that Ashford manifested the disorder in its active state or as part of her medical history. His failure to do so constitutes reversible error.

### 2. Physician's Opinion

■ "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997) (*citing MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler,* 776 F.2d 960, 961–62 (11th Cir.1985)). The Commissioner's regulations also recommend a similar preference for the opinions of treating doctors.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such

as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2).

■ The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053. "Good cause" exists where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. See *Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen,* 825 F.2d 278, 280–81 (11th Cir.1987). Good cause also exists where the doctors' opinions were conclusory or inconsistent with their own medical records. See *Jones v. Department of Health & Human Services,* 941 F.2d 1529, 1532–33 (11th Cir. 1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991).

■ The ALJ notes consultative examinations performed by Dr. Buren Wells ["Dr. Wells"] and Dr. Sam Banner ["Dr. Banner"](R. 22), both of whom concluded that Ashford can work (R. 22). He also notes the results of a consultative psychological evaluation performed by Dr. Leah Herrod ["Dr. Herrod"] and a consultative physical capacities examination performed by Dr. McKeown(R. 22). Dr. McKeown, who examined Ashford in 1999, also testified as a medical expert at Ashford's hearing (R. 23).

The ALJ has heavily relied upon the opinions of Dr. McKeown and Dr. Banner, and portions of Dr. Herrod's opinion. He has noted a continuity of care by treating psychiatrist Dr. Lopez and other staff at SpectraCare in Abbeville, including Ms. Lomac, the therapist. However, these medical opinions have been minimized, at best.[3] Ashford's visited SpectraCare to

---

**3.** "The opinion submitted by the claimant's

therapist regarding the severity of her mental

receive her medication via injection on a daily basis from some time in 1998 through the end of December 2000. For some years prior to this time frame, dating as far back as 1988, she has been a patient, also.

### a. Dr. McKeown's Opinion

The ALJ summarized Dr. McKeown's assessment as follows:

> At the hearing, Dr. McKeown, the medical expert, testified that he found there had been medical improvement in [Ashford's] medical condition, that she was well maintained on her medication and that it did not appear that she really needed SpectraCare counseling. Dr. McKeown opined that she did not meet or equal a listing and asserted that on March 22, 1999, when he evaluated the claimant at the request of the State Agency, she was being treated for schizoaffective disorder, but at that time he found that she "is in excellent remission from symptomatology and has been for a long period of time."

(R. 23). The ALJ also noted that Dr. McKeown believed that Ashford was doing well on the medication she was taking (*Id*). He further stated that because "she [had] been on disability so long ... weaning her from the disability system may be somewhat difficult" (*Id*). He concluded that Ashford possesses adequate coping skills, that daily four hour visits to SpectraCare were unnecessary, and that "she could function in a work setting" (*Id*).

As a result of the weight he accorded to Dr. McKeown's remarks, the ALJ found that "there has been a decrease in medical severity based on more than minor changes in symptoms, signs, or laboratory findings associated with the claimants impairment(s) present at the time of the most recent favorable determination" (*Id*). He also relied on Dr. Herrod's opinion in reaching these conclusions.

### b. Dr. Herrod's Opinion

The ALJ's analysis of Dr. Herrod's opinion follows:

> Dr. Herrod completed a Medical Source Statement in which she opined that the claimant had a fair ability in understanding, remembering and carrying out detailed instructions, maintaining attention, and concentration for extended periods, working with or near others without being distracted by them, getting along with co-workers and peers, and maintaining socially appropriate behavior. Dr. Herrod reported that the claimant had a good ability in understanding, remembering and carrying out short, simple instructions, performing activities within a schedule, maintaining regular attendance, and being punctual; sustaining ordinary and [sic] routine without special supervision; making simple work-related decisions; asking simple questions or requesting assistance; adhering to basic standards of neatness and cleanliness; responding appropriately to changes in the work setting, and being aware of normal hazards and taking appropriate precautions.

(R. 22). These conclusions appear to be based on the Medical Source Statement that Ashford provided (R. 366–367).

In that same statement, however, Dr. Herrod advised that

> [i]nformation from the interview indicated that she has been able to work in the past but at times will have symptoms that interfere with her functioning—particularly relationships w/coworkers.

condition is unsupported by the record" (R. 24).

Hallucinations will likely interfere w/her abilities to function in work setting. (R. 367).

Apparently, the ALJ failed to analyze this part of Dr. Herrod's opinion. He also failed to note Dr. Herrod's mention that Ashford had been treated for bipolar disorder in the past, that she had been jailed for her condition, and that she had been hospitalized for her condition for eight months some time ago (R. 362 and 365). When Ashford spoke with Dr. Herrod in August 2000, she told her that it was "unfair that I got sent to the hospital because there was nothing wrong with me" (R. 362).

The ALJ also failed to mention Dr. Herrod's following conclusions:

> ... Personality testing reveals a denial of psychological problems. She responded as do others who are attempting to maintain a facade of adequacy and control. In addition, individuals who respond similarly tend to be quiet and withdrawn, but have outbursts of poorly controlled hostility. This is consistent with information Ms. Ashford provided during the interview. ***Prognosis for change is poor.***
> ***Given Ms. Ashford's limited cognitive abilities, limited insight, denial of psychological problems, and tendency to isolate herself socially, it is doubtful that she would be able to obtain and adequately sustain employment.***

(R. 365)(Emphasis added). In drawing these conclusions, Herrod relied on data collected in Ashford's mental status exam:

> Hallucinations were acknowledged. Two weeks ago Ms. Ashford heard a man talking to her while she was driving down the highway. She indicated the experience was scary because there was no one there. She has told no one about the incident. She wants everyone to think she is normal ... Ms. Ashford also

reported having a nightmare on Sunday night. She thought she saw her mother and was scared because her mother is deceased. Her brother awakened her ... These recent hallucinations have frightened Ms. Ashford. A history of delusions, ideas of reference, and obsessions/compulsions were denied. She denied having phobias recently. During the interview, affect was broad, but appropriate to content of thought in conversation. There was a mild affective liability.

> ... She denied a history of suicidal ideation or attempts. Sleep difficulties were acknowledged. At night she may go to bed at 8 o'clock, but turns on the TV and is not sleepy. She reported feeling uncomfortable and moving from room to room. She believes she gets enough sleep because she takes a nap after Day Treatment from 2:00 to 7:00 P.M.

(R. 363).

The sum of Dr. Herrod's evaluation support a finding that Ashford has bipolar disorder and is unable to work as a result.

### 3. Dr. Lopez's and Ms. Lomac's Opinions

Dr. Lopez and Ms. Lomac have treated Ashford for at least ten years, beginning in 1988 and continuing through 2000 (Doc. # 21, p. 6). Dr. Lopez stated that Ashford suffers from bipolar disorder in mixed episode and partial remission (R. 508–510). She was placed on an intensive individual therapy plan as a result (*Id*). Consistent with Dr. Lopez's opinion, Ms. Lomac, who works as a therapist under him and heads the intensive therapy program at SpectraCare, testified at the hearing that

> [Ashford] has a diagnosis of bipolar disorder or commonly referred to as manic depressive, mixed episodes which is characterized by manics and depressive

cycles. She's currently on Prolixin D, an injection medication to control her active psychotic symptoms. Under my care I'm continuing to develop more rapport with Ms. Ashford but during the time she's been under my care, she demonstrates negative symptoms each time she's in the sessions. No overt behavior but negative symptoms which is significant being that she has a mood disorder because negative symptoms are mostly just mood and affect symptoms. She did demonstrate some overt symptoms in July 2000 where we had to adjust her medication. She was talking to herself, pacing, running out of the door, threatening other consumers, and we had to adjust her medication at that time. She calmed down but symptoms and behavior that previously led to hospitalization still persist. I have a extension request by her primary psychiatrist here dated for November the 15th and it specifically says that, "Symptoms and behavior that previously led to hospitalization persist or new symptoms appear to interfere with the client's ability to adapt. The client needs further regulation of medication under close supervision. She has a history of noncompliance, poor insight into the need for her medication. And without intervention or close regulation of her medication it would eventually lead to relapse or hospitalization."

(R. 38).

Based on these and other observations, SpectraCare personnel have concluded that Ashford is not able to work. She suffers from bipolar and other mental disorders (R. 314).

Contrary to the opinion of the ALJ, Dr. Herrod's opinion is more consistent with the opinions of Dr. Lopez and Ms. Lomac rather than those of Drs. McKeown and Buren. Herrod opined that "[p]rognosis for change is poor. Given Ms. Ashford's limited cognitive abilities, limited insight, denial of psychological problems, and tendency to isolate herself socially, it is doubtful that she would be able to obtain and adequately sustain employment" (R. 365). These opinions, when taken together, negate the ALJ's finding that good cause exists to discount the treating physicians' opinions.

One manifestation of the psychosis associated with personality disorder is denial of its existence. Moreover, a disorder such as bipolar may keep a claimant like Ashford from functioning on a jobsite for extended periods of time. The previously-cited testimony is indicative of the fact that, without proper management, Ashford will not take her medication. According to Dr. Lopez, Dr. Herrod, and Ms. Lomac, without her medication, Ashford will become non-functional and even ill. Her failure to acknowledge the gravity of her disorder is itself a reflection of bipolar disorder. All of these conclusions are supported by the weight of objective medical evidence dating as far back as 1988. Thus, the opinions that Ashford has bipolar disorder and is unable to work is supported by the weight of the medical evidence.

Therefore, it was error for the ALJ to find, as a matter of fact, that "[n]o treating or examining source or medical expert has concluded" that Ashford "has an impairment or combination of impairments that meets or equals the severity of one set forth in the Listing of Impairments" (R. 23).

## IV. CONCLUSION

For the reasons set forth herein, it is hereby ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further deliberation not inconsistent with this opinion. Specifically, the Commissioner is instructed to do

the following: (1) explicitly outline all of Ashford's severe impairments; (2) determine whether Ashford's severe impairments, including bipolar disorder, meet the equivalent of a listed impairment; and (3) determine if Ashford's severe impairments, especially the psychosis associated with her bipolar disorder, would permit her to work on a consistent basis if she is not medicated through a regulatory scheme, such as the one provided by Spectracare, and, as well, any other factors worthy of consideration.

## JUDGMENT

In accordance with the memorandum opinion entered herewith, it is hereby ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further deliberation not inconsistent with this opinion. Specifically, the Commissioner is instructed to do the following: (1) explicitly outline all of Ashford's severe impairments; (2) determine whether Ashford's severe impairments, including bipolar disorder, meet the equivalent of a listed impairment; and (3) determine, if Ashford's severe impairments, especially the psychosis associated with her bipolar disorder, would permit her to work on a consistent basis if she is not medicated through a regulatory scheme, such as the one provided by Spectracare, and as well, any other factors worthy of consideration.