[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15508
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-00348-WTH-PRL

MARCEL FAY HARRISON,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 24, 2014)

Before TJOFLAT, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Marcel Fay Harrison appeals the district court's order affirming the Social

Security Administration's (SSA) denial of her application for disability insurance

benefits.  Harrison argues that: (1) the Administrative Law Judge (ALJ) failed to give proper weight to the opinions of her treating physicians; (2) the ALJ assessed her residual functional capacity without considering her chronic fatigue syndrome and fibromyalgia; (3) the ALJ erred in finding that her testimony was not credible; and (4) the Appeals Council failed to consider new and material evidence that she submitted.  After careful review, we affirm.

I.

We first consider Harrison's argument that the ALJ erred by choosing not to give substantial weight to the opinions of  Dr. Eleanor Davina-Brown and Dr. Joseph DeLuca, her treating physicians.  Dr. Davina-Brown reported that Harrison suffered a number of physical limitations relating to her chronic fatigue syndrome, fibromyalgia, and immunoglobulin G (IgG) deficiency.  For example, Dr. Davina-Brown believed that Harrison was incapable of sitting for more than 15 minutes at a time and could not lift any objects weighing more than 10 pounds.  Dr. Davina-Brown also predicted that Harrison would need to miss work more than 3 times each month as a result of her medical impairments.  In the same way, Dr. DeLuca reported that Harrison suffered from bipolar disorder with psychotic features and delusions.  Based on this diagnosis, Dr. DeLuca stated that Harrison was "totally and permanently disabled and unable to [do] any work-related activities."  The

2

ALJ considered both of these opinions but found that they were entitled to little weight.

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (quotation marks omitted). We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner. Id.

The ALJ must give "substantial weight" to the opinion of a treating physician "unless good cause exists for not heeding the treating physician's diagnosis." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). We have held that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004); see

3

also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing that the medical opinion of a treating source is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record).  Also, an ALJ does not need to give a treating physician's opinion considerable weight if the claimant's own testimony regarding her daily activities contradicts that opinion.  See Phillips, 357 F.3d at 1241.  Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ can place on that opinion.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  "[T]he ALJ may reject any medical opinion if the evidence supports a contrary finding."  Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam).

## A.

With these principles in mind, we conclude that substantial evidence supported the ALJ's decision to give diminished weight to Dr. Davina-Brown's opinions regarding the severity of Harrison's physical limitations.  Indeed, the ALJ highlighted a number of ways that Dr. Davina-Brown's opinions were inconsistent with the record as a whole.

First, the ALJ found that Dr. Davina-Brown's opinions were unsupported by her own medical records.  It is true that this doctor described Harrison as "totally and permanently disabled" and consistently diagnosed Harrison with fibromyalgia,

4

chronic fatigue syndrome, and IgG deficiency, among other ailments. But her records contain no indication that Harrison's ailments were so severe that they prevented her from maintaining a job. To the contrary, Dr. Davina-Brown's physical examinations of Harrison were consistently unremarkable, and she never found that Harrison suffered from any of the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia, such as joint swelling, synovitis, or tender trigger points. For example, Dr. Davina- Brown prescribed medications for Harrison's chronic pain but never recommended more aggressive treatment, such as visits to the emergency room for pain or trigger point injections. The conservative and routine nature of Dr. Davina-Brown's treatment plan suggests that Harrison's impairments–while significant–were not so severe that Harrison could not perform any job duties.

Second, the ALJ also found that Dr. Davina-Brown's opinions were contrary to Harrison's own statements and testimony. For example, Harrison reported that she lived by herself and generally handled her own personal care, prepared her own meals, performed household chores, went shopping, drove a vehicle, and took care of her pets. Harrison also testified at the hearing before the ALJ that she fed her dogs on a daily basis, did household chores with assistance from neighbors, and regularly used her computer to play computer games and communicate with friends. In light of Harrison's ability to engage in these daily life activities, the

5

ALJ was justified in concluding that Harrison would also be able to perform daily job activities.

Finally, the ALJ found that Dr. Davina-Brown's opinions could not be reconciled with the remainder of the clinical and diagnostic evidence in the record. Dr. James Green and Dr. Efren Baltazar, two state agency physicians, observed that Harrison had full range of motion in her musculoskeletal system, and her current physical exams came within normal limits. These doctors also observed that Harrison was generally well-nourished and well-developed, with a normal gait and no clubbing, cyanosis, or edema in her extremities. Given these facts, both doctors estimated that Harrison would be able to sit with normal breaks for a total of about 6 hours in an 8-hour workday with minimal postural, manipulative, visual, communicative, or environmental limitations. They also estimated that Harrison could frequently lift objects up to 25 pounds and occasionally lift weights up to 50 pounds. Based on this record and our deferential standard of review, we cannot say that the ALJ's decision was unsupported by substantial evidence.

## B.

We also conclude that adequate evidence supported the ALJ's decision to give minimal weight to the opinions of Dr. DeLuca, Harrison's psychiatrist. Like Dr. Davina-Brown, Dr. DeLuca described Harrison as "totally and permanently disabled" because she suffered from bipolar disorder with psychotic features such

as delusions.  He did not explain, however, why this diagnosis prevented her from performing any job-related activities.  Additionally, Dr. DeLuca's records did not contain any objective findings regarding Harrison's limitations or examination results supporting his conclusions.  Because of this lack of evidentiary support, the ALJ was not required to give great weight to Dr. DeLuca's conclusory statements regarding Harrison's ability to work.  See Phillips, 357 F.3d at 1241 (noting that good cause exists for not heeding a treating physician's opinions when they are conclusory).

Beyond that, Dr. DeLuca's opinions were not entitled to great weight in light of the other diagnostic and clinical evidence in the record regarding Harrison's mental capabilities and limitations.  For example, state agency psychologist Dr. Steven Abraham drafted a detailed report after conducting a consultative evaluation of Harrison.  In his report, Dr. Abraham found that Harrison suffered from Dysthymic Disorder and Panic Disorder without Agoraphobia.  But he also stated that Harrison did not suffer from any manic episodes, psychotic symptoms, or hallucinations, and he generally found that Harrison was able to understand questions, follow commands, and access her short-term and long-term memory. Based on these observations, Dr. Arthur Hamlin and Dr. James Mendelson both predicted that Harrison would only have mild limitations in her ability to maintain social functioning, concentration, persistence, or pace in a workplace setting.  As a

7

result, substantial evidence supported the ALJ's decision to give Dr. DeLuca's opinions minimal weight.

C.

Harrison responds that the ALJ had a duty to contact Dr. DeLuca to obtain further clarification because his treatment notes were scarce and largely illegible. In support of this argument, Harrison points to 20 C.F.R. § 404.1512(e) (eff. Aug. 1, 2006, to June 12, 2011), which required the ALJ to obtain additional information "[w]hen the evidence . . . from [the] treating physician . . . is inadequate for us to determine whether [the claimant is] disabled." See also 61 Fed. Reg. 34471-01, 34474 (July 2, 1996) ("[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.").

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). "This special duty requires the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (per curiam)

(quotation marks omitted). "However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." Id. "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Id. (quotation marks omitted).

Harrison's argument misses the mark because she does not show how the ALJ's failure to contact Dr. DeLuca resulted in an unfair proceeding or clear prejudice. The ALJ did not find evidentiary gaps in the record that thwarted its ability to make a conclusive determination regarding Harrison's disability status. To the contrary, the record reflects that the ALJ analyzed more than 500 pages of records, including Dr. DeLuca's progress reports, a mental health examination report from Dr. Abraham, and two psychiatric review reports from Dr. Hamlin and Dr. Mendelson. Further, the ALJ gave no indication of any difficulties ascertaining the basis for Dr. DeLuca's opinions because his records were illegible or for any other reason. In fact, Dr. DeLuca issued a typed statement indicating that his opinions were based on a diagnosis that Harrison suffered from bipolar disorder with psychotic features, as manifest by delusions. The ALJ, however, found that this conclusory opinion could not be reconciled with the remainder of the evidence in the record. Without any demonstration that the record was

9

inadequate or led to unfairness or clear prejudice, we cannot say that the ALJ committed reversible error by choosing not to contact Dr. DeLuca for additional information.

## II.

We next consider Harrison's argument that the ALJ failed to properly consider how her fibromyalgia and chronic fatigue syndrome affected her residual functional capacity.  Harrison emphasizes that her treating physicians consistently diagnosed her with fibromyalgia and chronic fatigue syndrome, and she regularly told her doctors that she felt tired, fatigued, rundown, and lousy overall.  Harrison also points to her testimony before the ALJ, where she stated that she could not sit, walk, or concentrate for an extended period of time due to her daily fatigue, pain, nausea, numbness, and fogginess.  Because these facts all weigh in favor of a finding that Harrison is disabled, she argues that the ALJ did not meaningfully account for the severity of her fibromyalgia and chronic fatigue syndrome in arriving at the opposite conclusion.

Harrison's argument must overcome a deferential standard of review in order to succeed at this stage in the proceedings.  As we have said, we review the ALJ's decision to "determine if it is supported by substantial evidence and based on proper legal standards."  Crawford, 363 F.3d at 1158 (quotation marks omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court

must affirm, even if the proof preponderates against it." Dyer, 395 F.3d at 1210. At this stage, we cannot reweigh the evidence, find facts anew, or substitute our judgment for the ALJ's conclusions. Id.

Given this deferential standard of review, we cannot say that the ALJ's decision was unsupported by substantial evidence. The ALJ accepted Harrison's diagnosis of fibromyalgia and chronic fatigue syndrome, and also found that these impairments affected Harrison's ability to work. After carefully reviewing the entirety of the record, however, the ALJ concluded that the medical evidence did not support Harrison's claims that her ailments prevented her from working altogether. For example, the ALJ found that Harrison had not sought or required any hospital visits or emergency medical care in the previous year, suggesting that her symptoms could be managed with essentially routine and conservative medical treatment. The ALJ further observed that Harrison continued to handle her personal care, prepare meals, perform household chores, go shopping, drive a vehicle, care for two dogs and a cat, watch television, use a personal computer, and visit with friends and neighbors, even after the onset date of her ailments. As a result, we conclude that the ALJ's disability determination was supported by substantial evidence, even though there certainly was ample evidence supporting a contrary conclusion.

11

III.

Harrison next argues that the ALJ failed to articulate specific and adequate reasons explaining its decision not to credit her testimony.  For example, the ALJ's order set out that Harrison's testimony regarding her alleged pain and functional limitations was not wholly credible.  Harrison contends that this conclusion was not supported by substantial evidence in the record.

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony.  Id.  When evaluating a claimant's subjective symptoms, the ALJ must consider: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms.  See 20 C.F.R. § 404.1529(c)(3).

Against this legal backdrop, we conclude that the ALJ committed no error in finding that Harrison's testimony was not credible.  As we have said, the ALJ found substantial evidence in the record suggesting that Harrison's functional limitations were not as severe as she or her treating physicians alleged.  See supra, sections I, II.  Given this substantial evidence, the ALJ was justified in not

12

crediting Harrison's testimony regarding the severity of her symptoms and limitations. Beyond that, the ALJ also found numerous inconsistencies between Harrison's subjective complaints and the objective findings in the record. For example, Harrison testified that her IgG deficiency meant that she had the immune system of a two or three year-old and was prone to get sick frequently. Yet the ALJ found no records of hospital visits in the previous year based on these sudden bouts of illness. Also, Harrison first testified that she spent the vast majority of her time laying down or napping. She later testified, however, that she used her computer nearly every day to communicate with friends and play computer games, and the ALJ found that these activities likely took much longer than the 5 or 10 minutes a day that she estimated. Finally, the ALJ also found that Harrison's financial situation was likely not dire if she could maintain cable television and internet service. Based on these inconsistencies between her testimony and the other evidence in the record, the ALJ did not err in finding that Harrison's testimony was not credible.

## IV.

Finally, Harrison argues that the Appeals Council erred when it denied her request for review without properly considering the new and material evidence that she submitted to the Council. After the ALJ denied her application for disability benefits, Harrison sought review from the Appeals Council. She also submitted a

Mental Impairment Questionnaire completed by Dr. DeLuca, along with additional treatment notes. The Appeals Council, however, denied review after considering the additional evidence. According to Harrison, the Appeals Council should have granted review of the ALJ's decision because there is a reasonable probability that the new evidence would have changed the administrative outcome.

The Appeals Council must consider new and material evidence and must review the case if the ALJ's decision is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b); see also Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994). When a claimant properly presents new evidence to the Appeals Council and it denies review, we essentially consider the claimant's evidence anew to determine whether "that new evidence renders the denial of benefits erroneous." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

The Appeals Council did not err in refusing to remand to the ALJ based on the new evidence Harrison submitted. First, Dr. DeLuca's opinions in his questionnaire are conclusory and do not explain in any detail the reasons for his opinions. In the clinical findings section of the questionnaire, for example, Dr. Deluca simply asserts that Harrison suffers from severe mood swings with psychotic features, which is no different from earlier records that the ALJ found conclusory. In the same way, Harrison does not show how the extra treatment

14

notes from Dr. DeLuca change the weight of the evidence in her favor. Rather, these additional records appear to be cumulative with previous treatment notes that were already considered by the ALJ. As a result, the Appeals Council did not err in denying review to Harrison, even in light of the new evidence that she submitted.[1]

V.

For these reasons, we affirm the district court's order affirming the SSA's denial of Harrison's application for disability insurance benefits.

**AFFIRMED.**

---

[1] To the extent that Harrison argues that the Appeals Council is required to provide a detailed explanation for why it declined review in light of the new evidence, this argument is unavailing. Nothing requires the Appeals Council to further explain its denial of review, and it is up to us to consider the evidence anew to determine whether the new evidence renders the denial of benefits erroneous. See Ingram, 496 F.3d at 1262.